IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RCC II INVESTMENTS LLC,   **JURY TRIAL DEMANDED**

Plaintiff,

v.   CASE NO. _____

JOHN BARTOLETTA,   JUDGE: _____
HIGH STREET CAPITAL MANAGEMENT, LLC,
HIGH STREET GROUP, LLC, and
HIGH STREET FINANCIAL, LLC, and
NEWCASTLE CAPITAL MARKETS LLC.

Defendants.

## COMPLAINT

Plaintiff, RCC II Investments LLC ("RCC II") hereby sues Defendants John Bartoletta, High Street Capital Management, LLC, High Street Group, LLC, High Street Financial, LLC, and Newcastle Capital Markets LLC, and states as follows:

1. This is an action for violation of 15 USC 78j and 17 CFR 240.106-5; violation of Section 517.301, Florida Statutes; common law breach of fiduciary duty; common law fraud; and common law negligence.

2. Jurisdiction is proper pursuant to 28 USC 1331. Venue is proper pursuant to 28 USC 1391.

3. Plaintiff RCC II is a Florida limited liability company with its principal place of business in Florida.

4. Defendant High Street Capital Management LLC ("High Street Capital") is a Delaware limited liability company authorized to do business in Florida. Its principal place of business is in Tampa, Florida.

5. Defendant High Street Group, LLC ("High Street Group") is a Delaware limited liability company authorized to do business in Florida. Its principal place of business is in Tampa, Florida.

6. Defendant High Street Financial, LLC ("High Street Financial") is a Delaware limited liability company authorized to do business in Florida. Its principal place of business is in Tampa, Florida.

7. Defendant Newcastle Capital Markets LLC ("Newcastle") is a Delaware limited liability company with its principal place of business in Florida.

8. Defendant John Bartoletta is a natural person residing in Tampa, Florida. He is licensed under Federal and State security laws. Mr. Bartoletta is the principal of Defendants High Street Capital, High Street Group, and High Street Financial, and is an agent for all of these Defendants. At all times relevant, Mr. Bartoletta managed and controlled these entities.

9. On information or belief, Mr. Bartoletta is also the principal of Newcastle, and at all times relevant was acting as its agent. Additionally, on information or belief, Defendant Bartoletta managed and controlled Newcastle.

10. Defendant High Street Group is an affiliated company with Defendants High Street Capital, High Street Financial and Newcastle. All of these entities are managed, controlled, and primarily owned by Defendant John Bartoletta.

11. In November or December of 2009, Defendant Bartoletta contacted RCC II, through its two members Pauline Pope and Channing Crowder. Defendant Bartoletta was romantically involved with Crowder's Godmother at the time.

12. Defendant Bartoletta used this relationship to gain the trust of Pope and Crowder.

13. Shortly thereafter, Bartoletta drove to Miami and met with Pope and Crowder at Crowder's home to convince RCC II to invest with him and the other Defendants.

14. During this late 2009 meeting, John Bartoletta represented to RCC II the following regarding their proposed investment with High Street Group:

    a. that the investments selected would be safe and low risk;

    b. that the investments selected would be designed for conservative growth;

    c. that they could get their money back at any time;

    d. that the investment was consistent with RCC II's investment objectives and risk tolerances;

    e. that there would be complete transparency, meaning they would be able to access information regarding their investments 24/7; and

    f. that Defendants would only get paid if RCC II made money on its investments.

15. At this meeting, John Bartoletta was acting as agent for the other Defendants. He was further acting in the course and scope of his duties for these Defendants.

16. Subsequent to the meeting in Crowder's home, Defendant Bartoletta sent RCC II an information request, which purported to assess RCC II's investment goals and objectives. A true and correct copy of the completed request is attached as Exhibit A.

17. Crowder was a professional football player at the time he met with Defendant Bartoletta. Crowder's earnings funded RCC II. As such, it was important that the funds be

invested conservatively to insure Crowder's financial future, as professional football careers are shorter than other professions. Neither Pope nor Crowder had any significant investment experience. They were both relatively inexperienced and unsophisticated.

18. Based upon representations and assurances of Defendant Bartoletta, and the trust placed in him because of his relationship with Crowder's Godmother, RCC II decided to invest with Defendants. RCC II played no role in selecting the "fund" that Defendants selected for RCC II.

19. Defendants recommended to RCC II, a hedge fund known as New Advantage Futures, L.P. ("New Advantage"). On or about January 19, 2010, RCC II invested approximately $240,000 with Defendants, through New Advantage.

20. Attached hereto as Composite Exhibit B is RCC II's Subscription Agreement and Limited Partner Agreement.

21. At no time prior to RCC II's purchase of the limited partnership interests of New Advantage did any of the Defendants disclose to RCC II:

    a. that New Advantage would be trading in highly speculative and volatile investments;

    b. that the New Advantage limited partnership interests were highly sophisticated investments that are not appropriate for inexperienced and untrained individuals;

    c. that the New Advantage limited partnership interests carried a high degree of risk compared to other more traditional investments such as bonds and equities;

    d. that the New Advantage limited partnership interests were inappropriate for RCC II;

    e. that the New Advantage limited partnership interests were inconsistent with RCC II's investment objectives and risk tolerance;

  f.  that New Advantage, and its predecessor fund had consistently lost money since its inception in 2006;

  g.  that the other funds run by Defendants similarly had consistently lost money; and

  h.  that New Advantage would charge the limited partners such as RCC II exorbitant fees and expenses, including significant fees to New Castle.

  22.  Despite the assurance regarding transparency from Defendant Bartoletta, RCC II was provided little to no information on its investments. Defendants did not provide statements, and the promised internet access never materialized.

  23.  Pope repeatedly called Defendants office to get information on the investments, only to be told everything was fine. Finally, an agent for Defendants admitted to Pope that the RCC II investment was down. This prompted Pope to demand that RCC II's money be returned.

  24.  Defendants encouraged RCC II not to liquidate their limited partnership interests. They were assured by Defendants that the loss in value was unusual and temporary.

  25.  After repeated demands to return RCC II's money, Defendants sent RCC II a check for approximately $119,000 on or about February 25, 2011.

  26.  RCC II was not informed that New Advantage was liquidated as of September 30, 2010. Furthermore, due to Defendants' active concealment of information, Plaintiff RCC II had no knowledge of the misrepresentations and omissions until December of 2011, nor could it have discovered them with the exercise of reasonable care.

  27.  Defendants provided no explanation of how RCC II lost approximately $121,000, nor where the money was between October 1, 2010, and February 25, 2011.

  28.  RCC II made no investment decisions related to the operations of New Advantage or otherwise, but instead relied entirely upon Defendants.

29. As stated in the Limited Partnership Agreements, the General Partner for New Advantage is High Street Capital Management, which in turn hired High Street Financial to manage the investment decisions of New Advantage.

30. In 2010, New Castle was paid $214,369.00 as an introducing broker. Plaintiff had no relationship with New Castle.

31. Pursuant to the terms of the Limited Partnership Agreement, High Street Financial was paid a management fee of 2% per annum, plus 20% of any profits went to High Street Capital. See ¶s 4.04; 6.01 (b) of Exhibit B.

32. In 2010, the net investment <u>loss</u> for the New Advantage limited partners was 29.75%.

33. The limited partnership interests in New Advantage constitute securities under Federal and Florida law.

34. Defendants had a duty to recommend only suitable investments to RCC II under applicable law and standards governing the securities profession.

35. Defendants had a duty under Federal and State law, as well as the standards governing the securities profession, to disclose all material issues to RCC II regarding a recommended investment, such as New Advantage. They further had a duty to accurately and truthfully disclose these material issues.

36. The New Advantage limited partnership interests were unsuitable for RCC II, based upon Pope and Crowder's education, investment experience, risk tolerance and investment objectives.

37. Defendants knew that the New Advantage limited partnership interests were unsuitable but recommended and sold them to RCC II anyway for their own pecuniary gain.

38. RCC II has been forced to hire the undersigned to represent them in this matter and has agreed to pay him a reasonable fee for his services.

39. All conditions precedent have occurred or have been legally excused.

### Count I – Violation of 15 USC 78j and 17 CFR§ 240.10b-5

40. Plaintiff realleges paragraphs 1 to 39 as if fully stated herein.

41. Defendants have violated 15 USC 78j and 17 CFR §240.10b-5.

42. Defendants made false statements of material fact, including but not limited to the following:

   a. that the investments selected would be safe and low risk;

   b. that the investments selected would be designed for conservative growth;

   c. that they could get their money back at any time;

   d. that the investment was consistent with RCC II's investment objectives and risk tolerances;

   e. that there would be complete transparency, meaning they would be able to access information regarding their investments 24/7; and

   f. that Defendants would only get paid if RCC II made money on its investments.

43. Defendants acted at all times with scienter.

44. Defendants made omissions of material fact, including but not limited to:

   a. that New Advantage would be trading in highly speculative and volatile investments;

   b. that the New Advantage limited partnership interests were highly sophisticated investments that are not appropriate for inexperienced and untrained individuals;

    c.    that the New Advantage limited partnership interests carried a high risk compared to other more traditional investments such as bonds and equities;

    d.    that the New Advantage limited partnership interests were inappropriate for RCC II;

    e.    that the New Advantage limited partnership interests were inconsistent with RCC II's investment objectives and risk tolerance;

    f.    that New Advantage, and its predecessor fund had consistently lost money since its inception in 2006;

    g.    that the other funds run by Defendants similarly had consistently lost money; and

    h.    that New Advantage would charge the limited partners such as RCC II exorbitant fees and expenses, including significant fees to New Castle.

45. Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or acted with disregard for the truth in that they failed to disclose true facts, even though such facts were known to them.

46. Defendants' misrepresentations and omissions were made for the purpose of enriching themselves at the expense of RCC II.

47. In ignorance of the false and misleading nature of the representations and omissions described herein and the deceptive and manipulative devices employed by Defendants, RCC II purchased the limited partnership interests in New Advantage in reliance on the advice and recommendation of Defendants.

48. RCC II justifiably relied upon the representations and omissions of Defendants in purchasing their limited partnership interests in New Advantage.

49. RCC II would not have purchased the limited partnership interests in New Advantage but for Defendants' misrepresentations and omissions, which proximately caused RCC II's damages.

WHEREFORE, Plaintiff respectfully request that judgment be entered against Defendants for damages, prejudgment and post-judgment interest at the maximum rate allowed by law, court costs, and any other relief this Court deems fair and just.

### Count II – Violation of Chapter 517.301, Florida Statutes

50. Plaintiff realleges paragraphs 1 to 49 as if fully set forth herein.

51. Defendants violated Section 517.301, Florida Statutes.

52. Section 517.211 (2) provides as follows:

> Any person purchasing or selling a security in violation of s. 517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission, if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.

53. Defendant John Bartoletta personally participated, or aided in making the sale of the limited partnership interests to RCC II.

54. Pursuant to Section 517.211(4), Florida Statutes, RCC II is entitled to the difference between the $240,000, initial investment plus interest, and the amount they received from Defendants ($119,000).

55. Additionally, pursuant to Section 517.211 (6), Florida Statutes, RCC II is entitled to its reasonable attorneys' fees.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants for damages, prejudgment and post-judgment interest at the maximum rate allowed by law, attorneys' fees, court costs, and any other relief this Court deems fair and just.

### Count III – Breach of Fiduciary Duty

56. Plaintiff realleges paragraphs 1 to 39 as if fully stated herein.

57. As licensed investment professionals, Defendants owed a fiduciary duty to Plaintiff RCC II.

58. RCC II placed its trust and confidence in Defendants to recommend investment options that were suitable for it.

59. Defendants breached their fiduciary duties to RCC II by making misrepresentations and omissions with regards to New Advantage.

60. Defendants' breach of their fiduciary duties has caused RCC II to suffer damages.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants for damages, prejudgment and post-judgment interest at the maximum rate allowed by law, court costs, and any other relief this Court deems fair and just.

### Count IV - Fraud

61. Plaintiff realleges paragraphs 1 to 39 as if fully stated herein.

62. Defendants made material misrepresentations and omissions to RCC II in regards to the New Advantage limited partnership interest, as alleged herein.

63. Defendants knew the above representations were false at the time they made them.

64. Defendants made the representations and omissions to induce RCC II to purchase the limited partnership interests in New Advantage.

65. In reliance on the representations and omissions, RCC II purchased the limited partnership interests in New Advantage.

66. RCC II has suffered damages as a result of Defendants' misrepresentations and omissions.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants for damages, prejudgment and post-judgment interest at the maximum rate allowed by law, court costs, and any other relief this Court deems fair and just.

## **Count V - Negligence**

67. Plaintiff realleges paragraphs 1 to 39 as if fully stated herein.

68. Defendants owed a duty to RCC II to insure that any investments recommended were suitable for RCC II.

69. Defendants breached this duty by negligently recommending New Advantage to RCC II.

70. But for Defendants' recommendation, RCC II would never have invested in New Advantage.

71. Defendants' negligence has caused RCC II to suffer damages, including the loss of approximately $121,000, plus interest and appreciation on the $240,000 for the thirteen months they were invested with Defendants.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants for damages, prejudgment and post-judgment interest at the maximum rate allowed by law, court costs, and any other relief this Court deems fair and just.

**PLAINTIFF DEMANDS JURY TRIAL ON ALL ISSUES SO TRIABLE**

Dated this 19th day of March, 2012.

_____
KEN ABELE
Georgia Bar No. 000377
Florida Bar No. 0254370
Ausley & McMullen
123 S. Calhoun Street
Post Office Box 391
Tallahassee, Florida 32302
(850) 224-9115

**Attorneys for Plaintiff**